Your Honor, John Rogerson on behalf of the Petitioner's Appeal with David Latorre of Verlarde. Essentially, this restraints, similar to the case that's been discussed previously, the essential issue is that as far as our contention is that the immigration judge did not find our petitioner credible as far as his fear of both past and future persecution. Our basis upon that is that this individual is a homosexual and that his traditional country is the Philippines and that in the immigration hearing he showed specific instances where he's been physically and psychologically tormented and, therefore, he had a fear of that. He came to the United States in 1992. The hearing was on May 22nd, 2003. We simply that our basis is that because he is a homosexual and he's an open homosexual and that the traditional culture of the Philippines that he feels that he, if he was returned, that he would be persecuted, that even he would be, as far as his physical life. Is that a protected group under the statute? I believe it has been recognized that homosexuals are, as a group, you know, are as a protected group. I believe that's correct. But that so, therefore, we feel that, you know, that there is a question as far as credibility that this case should be remanded back to the immigration court for further testimony on behalf of the fear that he might fear that he might face in the future. Don't we have to find that what happened to him was persecution? Couldn't somebody reading this objectively conclude that what he's describing is harassment based on that was a direct response to his conduct as opposed to persecution? Because he worked quite successfully. He was working quite successfully in the country he was in and he came to the United States not to escape persecution. He came to the United States because the company that he was working for had a job and offered him a better job in the United States. And he came to the United States to take that better job. Isn't that what this record shows? I would say that, too. Yes. It also shows that he, like he desired to improve his economic opportunity, but that also that he also had a well-grounded fear that if he returned to the Philippines that he'd continue to face this persecution. What in this record shows that? There have only been, like, in the record there's specific instances where I believe he was Two instances. Yes. And one where somebody stripped his clothes, tried to strip his clothes off of him. Correct. And the other. Were there others that I don't know about? The other instance where I believe. I mean, in this record? In the record, I believe there was one other instance where he was accosted by three drunken individuals. Yes. Yes. So we're looking at persecution or harassment. Are we? Does it make a difference? Is any harassment persecution? I would say in the context of the culture that I believe is hostile toward homosexuals that harassment can elevate itself toward persecution. However, I. Hostile toward homosexuals who choose to be openly feminine. Isn't that right? Or who, because of any other reason, are openly feminine. But isn't that the thing we have to look at in this record? Yes. When you say remand, I don't know what's false. What else, what other findings would they make if we remanded? I think, too, that there's also the issue that as far as that he feels that there are some, even though that the immigration judge disagreed, that because of his involvement with the national, the MPA, that there's, because of the, some of the houses where he used to live and the political struggles, that he feels some fears as far as that. The immigration judge in the hearing said that he didn't find it credible because once he said he was a spy, but then he wasn't a spy. And we would attribute that to when there's the first asylum application because of language difficulties and his attorney preparing it, that that's why he contradicted himself at the immigration hearing, so that not only did he fear because he's an openly homosexual, but also that because of his fears of him being perhaps an enemy of some. Doesn't the record show that somebody told him that they think you're a spy because he was going in to do the hair, what have you, and then for six years following, he continued to go in and do the hair, didn't he? Yes, he did, Your Honor. And the record shows that, doesn't it? With respect to that, I would simply add that we believe that because of what I've outlined, that because of the threat as far as him being the risk, because he's a perpetual spy and the homosexual activity, that we feel we would ask the court if we could remand him so that we could have additional fines as far as his credibility and his threats. All right. Thank you. May it please the Court. Jonathan Potter on behalf of the Attorney General. First of all, Judge Schroeder, your question. In fact, the Board in 1990 recognized homosexuality as a protected group, and that was adopted as a precedent decision by Attorney General Rego in 1994. Nothing in this record compels the conclusion that Valerity, in fact, suffered persecution on account of a protected ground in this case. First, as to Valerity's claims that he suffered persecution in the Philippines, these generally boil down to three, maybe two, possible activities on the part of others that were persecution. First, he claims that he was accosted by a group of people who called him gay on the street, and they appeared to be intoxicated. Second, the one instance he claims that he was persecuted was when somebody either raped or attempted to have oral sex with him or something along those grounds. And it was a client of his who apparently was in the same social group as Valerity and who accosted him in the home. There's no indication that any of this was sanctioned by the government of the Philippines. There's no indication at all that any of this activity was even known by the government of the Philippines. Nothing in this record supports the conclusion that this individual proved anything other than he received some harassment while in the Philippines. But nobody, I hope even the government, doesn't want to see any class of people harassed. But we have to look to see is there persecution, don't we? That's absolutely true, Your Honor. We don't want to see anybody harassed. Harassment and persecution are two different things.  But definitely not in this case where we have two, at most, instances where he was allegedly harassed. This just does not rise to the level of persecution. In this record, it's clear that even the petitioner in this case thought maybe he hadn't made his case, so then he jumps on the asylum claim that he had earlier withdrawn and specifically withdrawn on the record and through his own testimony and saying that, no, I was a spy for the rebels, which the immigration judge dismissed as not being credible. That's the portion of the record that the immigration judge found that Filardi was not credible on. It was not the portion of the record where he said, I'm gay and was harassed. Nothing in this record should compel the conclusion that the immigration judge in this case got this decision wrong, and therefore we ask that this Court affirm the decision of the immigration judge and board. Thank you. Thank you. Any further questions? Thank you. Mr. Rogers, do you wish to add anything? No, Your Honor. Thank you. The case just argued is submitted for decision.
judges: Schroeder, Farris, Rawlinson